# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| SAMUEL R. SIMS,<br><br>    Plaintiff,<br><br>vs.<br><br>SAINT ANTHONY REGIONAL<br>HOSPITAL AND NURSING HOME<br>a/k/a Saint Anthony Regional Hospital,<br><br>    Defendant. | No. C13-3044-LTS<br><br>**ORDER ON DEFENDANT'S<br>MOTION IN LIMINE**<br><br>**(<u>FILED UNDER SEAL</u>)** |

_____

## I.   INTRODUCTION

This case is before me on a motion (Doc. No. 24) in limine filed by defendant Saint Anthony Regional Hospital and Nursing Home (Saint Anthony) on January 26, 2015. Plaintiff Samuel R. Sims filed a resistance (Doc. No. 29) on February 9, 2015, and Saint Anthony filed a reply (Doc. No. 40) on February 13, 2015. I heard oral arguments by telephone on February 13, 2015. The motion is fully submitted and ready for decision.

## II.   RELEVANT BACKGROUND FACTS

The parties have stipulated to the following facts:

1.     Sims signed an employment agreement to work as a Certified Registered Nurse Anesthetist ("CRNA") for Saint Anthony on January 25, 2008.

2.     As part of the employment agreement, Sims received a lump sum as additional compensation from Saint Anthony and signed a loan agreement with Saint Anthony regarding that payment.

3.     On April 7, 2011, Sims voluntarily resigned his employment with Saint

Anthony to take a CRNA job in Sterling, Colorado.

4. A dispute arose between the parties regarding what portion, if any, of the additional compensation Sims was required to repay. On December 28, 2011, Saint Anthony filed a lawsuit against Sims seeking repayment of a portion of the additional compensation.

5. On March 16, 2012, Sims and Saint Anthony entered into a settlement agreement resolving all issues between them related to the additional compensation and loan agreement.

6. The settlement agreement contained the following provision:

> The Parties expressly agree that neither they nor their past and/or present officers, directors, shareholders, assigns, partners, parents, subsidiaries, affiliates, related companies, predecessors, successors, agents, partners, employees, attorneys, insurers, and representatives will make any statements, written or verbal or otherwise, or cause or encourage others to make any statements, written or verbal or otherwise, that defame, disparage, or in any way criticize the personal or business reputation, practices, or conduct of each other. The Parties understand and agree that this paragraph is a material provision of this Agreement and that any breach of this paragraph shall be a material breach of this Agreement.

7. In August 2012, Sims applied for a CRNA position with Iowa Specialty Hospital (ISH). He interviewed for the position in Clarion in early September 2012.

8. ISH did not hire Sims for the CRNA position.

*See* Final Pretrial Order (Doc. No. 36) at 2-3.

According to Sims, David Kellerman was another CRNA at Saint Anthony. Sims alleges that Kellerman resigned at some point and accepted employment at ISH. About one year after Sims left Saint Anthony for the Colorado position, Kellerman allegedly contacted him and encouraged him to apply for an open CRNA position at ISH. Sims contends that while he was not actively looking for other employment at that time, he nonetheless forwarded his resume to Kellerman in August 2012, thus triggering ISH's

2

recruitment of Sims. Sims contends that he visited ISH in September 2012 and returned to Colorado with the expectation of receiving a job offer. Sims further alleges that ISH eventually declined to make an offer and contends that this decision was based on negative information about him provided by Saint Anthony to ISH. In short, Sims contends that Saint Anthony breached the settlement agreement by making disparaging comments to ISH, thus causing Sims to lose the opportunity to work at ISH. Additional details about Sims' allegations will be provided below, as necessary.

### III.  THE MOTION IN LIMINE

Sims' contention that Saint Anthony breached the settlement agreement is based largely on hearsay. It appears that no employee or agent of ISH will testify that he or she received information about Sims from Saint Anthony. Nor will any employee or agent of Saint Anthony testify that he or she provided information about Sims to ISH. During the hearing, Sims' counsel indicated that Sims will rely on some circumstantial evidence to argue that ISH would have hired him but for the receipt of negative information from Saint Anthony. However, Sims also seeks to introduce evidence of certain out-of-court statements allegedly made by two ISH employees, Cindy Hunter and Jodi Azeltine. Sims contends that Hunter made the following statements to him, Kellerman and/or Dean Heideman that she now denies making (or claims to have no recollection of making):

   a. that ISH would not be offering a CRNA position to Sims based on his and Kellerman's history of working together at Saint Anthony;

   b. that ISH needed to call Saint Anthony for a reference check;

   c. that Azeltine needed to call and do a reference check on Sims; and

   d. that ISH would not be offering a CRNA position to Sims because ISH received a phone call from Saint Anthony and was told that Sims and

3

> Kellerman were a force to be reckoned with in the department when they worked together at Saint Anthony.

Doc. No. 29-1 at 8. As for Azeltine, Sims contends she told Heideman that she received a voicemail message from Saint Anthony instructing ISH not to hire Sims because he and Kellerman did not work well together. *Id.* All of these alleged statements will be referred to herein as the "ISH Out-of-Court Statements."[1]

Sims intends to call Hunter and Azeltine as witnesses during his case-in-chief, with the expectation that they will deny making the ISH Out-of-Court Statements. He would then present testimony from Kellerman, Heideman and himself about those alleged statements. He argues that this hearsay evidence is admissible for impeachment purposes pursuant to Federal Rule of Evidence 613(b), and suggests that the court fashion an appropriate limiting instruction.

Not surprisingly, Saint Anthony takes a dim view of Sims' proposed procedure. It points to Sims' concession that no exception to the hearsay rule permits the ISH Out-of-Court Statements to be received as substantive evidence. It then notes the apparent incongruity of Sims calling Hunter and Azeltine as witnesses to set up their impeachment with alleged hearsay statements. Further, it argues that danger of unfair prejudice exceeds the limited impeachment value of those statements. Thus, Saint Anthony argues that it is entitled to an order in limine excluding evidence of the ISH Out-of-Court Statements.

---

[1] Sims also states that Heideman will testify that he heard a voice-mail message that was allegedly left by a Saint Anthony employee. While that testimony may present other issues, it does not involve an out-of court statement allegedly made by Hunter or Azeltine.

## IV. ANALYSIS

Unless a rule or statute provides otherwise, hearsay is not admissible. Fed. R. Evid. 802. Hearsay is a statement that:

(1) the declarant does not make while testifying at the current trial or hearing; and

(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Fed. R. Evid. 801(c). The Rules of Evidence describe various statements that are not hearsay and also provide certain exceptions to the rule against hearsay. *See, e.g.,* Fed. R. Evid. 801(d), 803, 804, 807. When an out-of-court statement contains layers of hearsay, the statement is admissible only if each layer "conforms with an exception to the rule" against hearsay. Fed. R. Evid. 805.

Sims acknowledges that the ISH Out-of-Court Statements are hearsay and does not contend that they fall within any exception to the hearsay rule. Thus, he does not argue that they may be received as substantive evidence. However, he contends that they are admissible for impeachment purposes pursuant to Rule 613(b), which states:

> **(b) Extrinsic Evidence of a Prior Inconsistent Statement.** Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires. This subdivision (b) does not apply to an opposing party's statement under Rule 801(d)(2).

Fed. R. Evid. 613(b). Saint Anthony disagrees, arguing that Sims is making an "end run" around the hearsay rule and, in any event, that the ISH Out-of-Court Statements must be excluded pursuant to Rule 403, even if they might otherwise be admissible.

5

### A. *Rule 613(b)*

To impeach a witness based on a prior inconsistent statement: (1) the statements must be inconsistent, (2) the inconsistency must be relevant, (3) the inconsistent statement must be disclosed to opposing counsel, the witness allowed to explain the inconsistency, and opposing counsel allowed to question the witness about the inconsistency, and (4) the district court must provide the jury with a limiting instruction that the evidence goes to the credibility of the witness only. *United States v. Larry Reed & Sons Partnership*, 280 F.3d 1212, 1215 (8th Cir. 2002) (citing *United States v. Rogers*, 549 F.2d 490, 495–98 (8th Cir. 1976)). The prior inconsistent statement may not concern a collateral matter. *United States v. Durham,* 470 F.3d 727, 732 (8th Cir. 2006). Moreover, even when these requirements are met the court must conduct a balancing test under Rule 403 to determine whether the probative value of allowing the extrinsic evidence for impeachment purposes substantially outweighs the dangers unfair prejudice, confusion of the issues, etc. *Id.*

Sims argues, and I agree, that the ISH Out-of-Court Statements appear to satisfy the essential requirements of Rule 613(b). That is, if Hunter and Azeltine testify that they did not make those statements, or that they do not recall doing so, then their alleged prior statements would be inconsistent and relevant. Moreover, the statements have been disclosed to opposing counsel and the witnesses presumably will be given the opportunity to explain the apparent inconsistencies. Finally, Sims agrees that a limiting instruction would be required wherein the jurors would be told that they can consider evidence of the prior statements only to evaluate Hunter's and Azeltine's credibility. Thus, and as Saint Anthony largely acknowledges in its reply, the fighting issue here involves the application of Rule 403.[2]

---

[2] While Saint Anthony reserves the right to object on grounds that Sims has not met Rule 613(b)'s foundational requirements, for purposes of its motion in limine it relies on Rule 403. Doc. No. 40 at 2 n.2.

## B. *Rule 403*

Rule 403 states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. As noted above, extrinsic evidence of prior inconsistent statements must pass the Rule 403 balancing test even if those statements meet the requirements of Rule 613(b).

Rule 403 concerns are particularly apt when a party seeks to impeach its own witness with otherwise inadmissible hearsay. *See, e.g., United States v. Logan,* 121 F.3d 1172, 1174-75 (8th Cir. 1997). In that situation, there is a risk that the party calling the witness is doing so for the purpose of creating an opportunity to expose the jury to otherwise inadmissible hearsay statements. *Id.; see also United States v. Fay*, 668 F.2d 375, 379 (8th Cir. 1981) (holding that courts should not permit impeachment to be used as a subterfuge to place otherwise inadmissible hearsay statements before the jury). As one commenter has explained:

> A party might call a witness with the expectation that she will testify in a way inconsistent with a prior statement. This testimony then could provide the party calling the witness with an opportunity to offer the prior statement to impeach. But the purpose of this exercise would not be to attack the credibility of the witness since there is little point in calling a witness just to impeach her. Rather, the purpose could be to permit the jury to hear the prior inconsistent statement in the hope that the jury would use the statement to establish the truth of the matters asserted in it, even though the evidence was formally offered only to impeach. This would undermine the prohibition against the admission of hearsay.

27 Wright & Gold, *Federal Practice and Procedure: Evidence* § 6093 at 496 (1990).

Thus, for example, "Rule 403 serves to prevent a party from calling a witness, knowing her to be adverse, simply to admit under the guise of impeachment an out-of-

court statement that implicates the defendant." *United States v. Green-Bowman*, No. 13-CR-2023-LRR, 2014 WL 1370746, at *8 (N.D. Iowa Apr. 8, 2014) (citing *United States v. Demery*, 674 F.3d 776, 780 (8th Cir. 2011)). In *Demery,* the Eighth Circuit Court of Appeals explained that the potential for unfair prejudice arises because the jury may misuse evidence of the prior inconsistent statement as substantive evidence rather than as mere impeachment evidence. *Demery*, 674 F.3d at 780.

Here, Saint Anthony argues that the legitimate probative value of the alleged ISH Out-of-Court Statements is slight. For example, if Hunter and Azeltine testify that they do not recall making such statements, the only appropriate purpose for allowing the jury to hear extrinsic evidence of those statements would be to evaluate whether they honestly denied recollection of events that allegedly occurred over two years ago. As Chief Judge Reade noted in *Green-Bowman*, evidence of whether a witness honestly denies recollection of prior statements has little probative value. 2014 WL 1370746, at * 10.

Of course, if Hunter and Azeltine squarely and vehemently deny that they made the ISH Out-of-Court Statements, the probative value of the extrinsic evidence would be somewhat greater. In that case, the jury could rely on the prior statements to find that Hunter's and Azeltine's denials are false. That, in turn, could cast doubt on other aspects of their testimony. For example, if the jurors find that Hunter falsely denies making the alleged prior statements, they could conclude that she is not truthful as to other matters, such as the reasons ISH chose not to extend an offer to Sims.

In short, the "probative value" side of the Rule 403 balancing test depends, to some extent, on Hunter's and Azeltine's actual testimony concerning the ISH Out-of-Court Statements. As for the "unfair prejudice" side, Sims all but admits that his entire case rides on his ability to tell the jury about the ISH Out-of-Statements. He states: "Prohibiting Sims from offering the evidence described herein for the purpose of impeaching Hunter and Azeltine allows those witnesses to conveniently forget or deny

8

what they previously said and <u>leaves Sims with the inability to have the jury determine whether or not St. Anthony breached the settlement agreement</u>." Doc. No. 29-1 at 11 [emphasis added]. Thus, while acknowledging that the ISH Out-of-Court Statements are inadmissible hearsay and can, at best, be used to attack the credibility of two non-party witnesses, Sims complains that excluding evidence of those statements would effectively gut his case. As Saint Anthony points out, this simply highlights the problem. It appears that Sims has little, if any, direct admissible evidence supporting his suspicion that Saint Anthony provided disparaging information about him to ISH. Allowing the jury to hear otherwise-inadmissible hearsay under the guise of impeachment would help fill this evidentiary gap. Regardless of any limiting instruction, the jury could very well use the ISH Out-of-Court Statements as substantive evidence to support a finding that Saint Anthony disparaged Sims, thus causing ISH to refrain from hiring Sims. *See, e.g., Demery*, 674 F.3d at 780.

Contrary to Sims' argument, the alleged prejudice *to him* of excluding evidence of the ISH Out-of-Court Statements is not persuasive. In other words, inadmissible evidence does not become admissible simply because the plaintiff's case would suffer without it. Many claims based on the alleged comments of former employers fail because the plaintiff cannot offer admissible, non-hearsay evidence. *See, e.g., Matthews v. Wisconsin Energy Corp.*, 534 F.3d 547, 557 (7th Cir. 2008) (rejecting plaintiff's attempt to rely on a hearsay statement from a prospective employer to prove that a former employer breached a settlement agreement); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999) (rejecting retaliation claim because plaintiff presented no testimony from prospective employer attributing its decision not to hire him to any communication from the prior employer); *Benic v. Reuters America, Inc.*, 357 F. Supp. 2d 216, 224 (D.D.C. 2004) (rejecting defamation claim against former employer because plaintiff's testimony about what a prospective employer

9

told him was inadmissible hearsay); *Hager v. Venice Hospital, Inc.*, 944 F. Supp. 1530, 1535-36 (M.D. Fla. 1996) (rejecting defamation claim that was based on what a third-party told the plaintiff the defendant had said about the plaintiff).

Here, there appears to be a great risk (and, apparently, a hope on Sims' part) that the jury would treat the ISH Out-of-Court Statements as substantive evidence instead of simply (and properly) using them to consider Hunter's and Azeltine's credibility. For this reason, I strongly suspect that extrinsic evidence of those statements will have to be excluded at trial. I will grant Saint Anthony's motion in limine at this time to prevent any reference to the ISH Out-of Court Statements in the presence of the jury until further order.

This is not a final ruling. As suggested above, the probative value of the ISH Out-of-Court Statements depends, to some extent, on Hunter's and Azeltine's actual testimony. I will permit additional argument and, of course, an offer of proof after that testimony is presented to the jury. At this point, however, I am far from convinced that the probative value of the ISH Out-of-Court Statements will exceed the danger of unfair prejudice.

## V. CONCLUSION

For the reasons set forth herein, Saint Anthony's motion (Doc. No. 24) in limine is **granted**, as follows:

1. Unless and until the court orders otherwise, no party, counsel or witness shall, in the presence of the jury, make reference to any out-of-court statements allegedly made by witnesses Cindy Hunter or Jodi Azeltine.

2. Once the testimony of those witnesses has been presented to the jury, either party may make a request outside the presence of the jury to make a record and present additional arguments concerning their alleged out-of-court statements.

3. The Clerk shall file this order under seal. It shall be unsealed ten days after completion of trial or entry of an order of settlement unless a party files a motion within that ten day period showing good cause why they should remain sealed.

**IT IS SO ORDERED.**

**DATED** this 17th day of February, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE